O’Neall, J.
1. It is an old and a true saying, that there never was a general rule without exceptions. This is, perhaps, more peculiarly the case in rules of law than in any other; for the continually varying circumstances of cases, must of course, to make it impossible that any single rule will answer for all even of one kind. But the multiplication of exceptions to suit cases of individual hardship, is calculated to disarrange the general symmetry of the law, and to introduce endless confusion. It is hence the maxim stare decisis. These remarks are induced by the zeal with which, in this and the case of Harper v. Ardis,* it has been pressed upon us to 'carve out an exception to the rule settled in Jones v. West. (a.)
andador or Si-jiiinistraioris li-bill, ami the teifMfrom '*ttíé charge, is on
debts an estate paid ad’m” are not to be credited to him with the ¡"teiftorthe saló bid °feU due?— tion, tiie sale be rcgardea as furnishing t“p4 the debt”;' and his account with, ““aTJLadSitó thetime of pay-Erectile4 Se J'i11 "EiT was ínaPdoy after The due, “hen CS interest until
*562 Put after a careful consideration of the rule stated in that case, and three or four others of the same kind, with a spirit to be profited by the critical examination of it by the Chancel- ^ t^e cage of Harper v. Ardis, I have come to the conclu-s¡on, diat p ;s wisest and safest to adhere to that.decision. It *s true that it may give rise to cases of hardship occasionally; but, generally, it will approach nearer to- equal justice, in the settlement of the accounts of executors, administrators, guár-dians, or other trustees, than any other practicable rule. It is a maxim in Equity, that trustees who act faithfully in the discharge of their trust, are to be favoured; yet, carry out the principles which have been contended for m this, case, and wbich are plainly inferable from the cases put by the Chan, cellor in Harper a. Ardis, and nine times out of ten, the management of a large estate, of many years standing, would consume in interest not made,, and which could not be made, much of the private fortune of the most economical and prudent fmofoiv irusiee‘
The first general rule, governing the accountability of trus. tees in Equity, is that they should not make profit out of the estate. This rule necessarily subjects them to an ac-cciunt for all the interest which they actually malee and receive; *563 but as the ascertainment of the actual amount of interest received, is always a difficult and often an impracticable task, the rule was adopted, to charge them with interest on annual valances. This is, it is true, so far as justice and convenience is concerned, and in its application to trustees generally, an artificial rule ; but so far as executors and administrators are concerned, it is a rule resulting necessarily, as I shall hereafter shew, from the statute law, and partaking, therefore, of its inflexibility. Like most artificial and legal rules, it may be, and I have no doubt is, as imperfect as ifs authors : to its fair and equal operation, an ingenious mind may suggest many objections ; but it is not either fair or wise, to test a practical legal rule by extreme supposed cases. How does it operate on the mass 1 would seem to be the fair inquiry. I have no doubt that the rule does and will operate fairly, on ninety-nine cases out of an hundred.
‘“¿^docsbiot Sprescnuhóes-^fintcstateld-ministered, and “¿“faireston any funds of hands of his in-Jjs deatiiof the first hf’íTá'iíáTaT'hT-came a debt duo TkiciiTio “prel EJand or receive pay-bear’14 interest! Therefore:
miuStratorTiied Jtate™ iuof ^¡° bauds, and ad-Egran“e”dWa-gain for three uEstatfofthc Eiiabtefor'in’ terest,during the waf unrepresented,
Generally, an administrator, guardian, or other trustee, receives the funds of an estate, not only throughout the whole course of one year, but very often through several successive ones. He pays the debts and expenses in pretty much the same way. Would it comport with justice to charge him with interest on a fund received in the course of one year, out of which he may have been continually making payments 1 Pursue such a course, and he will pay interest on the very money which, m the course of the year, he paid away. '
It often happens that for want of opportunities to loan out money, which cannot always be proved, sums of money lie idle, and are, therefore, unproductive for short times, which, although they may appear of trifling consequence, considered singly, yet produce an aggregate of great mischief to the most prudent man, in the management of an estate, unless ho is protected by the operation of the rule which considers all funds received in the current year, as.unproductive until the close of it. These views are not the result of mere speculative reasoning, but of an extensive experience on the subject.
But I think there is not only a fitness in the rule, which recommends it: it has also the advantage of both age and statute law on its side. For, since 1811, it has been the invariable rule whereby the accounts of executors and administrators have been made up, when the subject was properly attended to. The case of Darrell v. Eden, decided in that year, repudiated the rule of making up the accounts at the end of every six months, and directed them to be made up annually, and interest to be allowed on the annual balances of principal. 3 Eq. Rep. 244. This was establishing the very ride by which the case of Jones V. West was decided ; and the only novelty in that case, and the case of Foot ». Van Ranst, to which it re *564 fers, was in shewing, in particular instances, the operation of an old and familiar rule. I take it upon me to say, that in no case of settling an executor’s accounts, has the Court adopted it as a general rule, to allow six months or any other specific time from the receipt of a fund, for its investment. Such a thing might occur, where an executor was directed by a will to invest in stock, the money of an estate as he received it. The general rule is, that interest is to be computed on annual balances; and the reason assigned in Darrel v. Eden, is a just, true, and legal one, “for the law directs executors to make up their accounts yearly.” The 28th section of the executor’s law (act of 1789, P. L. 495) directs that “ executors or administrators shall, annually, whilst the estate shall remain in their care or custody, at the first Court to be held after the 1st day of January, render to the Court of the county, or ordinary of the district, (as the case may be,) from whom they obtained probate of will, or letters of administration, a just and true account, upon oath, of the receipts and expenditures of such estate the preceding year.” According to this provision, the moneys received and paid away are to be balanced at the end of each year ; and the executor’s or administrator’s annual return, becomes against him, an account stated for whatever balance is in his hands : upon this interest is of course, and is, I think, the legal result of this provision of the act.
But as illustration of a plain thing seems to be demanded, let us state the matter in another way. An executor is, by law, regarded as a steward, who is, annually, in the receipt of the funds of an estate ; and he is charged out of them to pay, in their legal order, expenses, debts and legacies, which are or may be legally demanded, in each year, and make up his accounts at the end of it, so that they may be audited at the first Court of Ordinary in the coming year. When this account is presented to the ordinary, as the executor’s principal, and he finds a balance left in favor of the estate, the legal inquiry would be, what ought to be done with this sum ? Put it at interest, would be the advice of prudence, as the most profitable course, and this is the law’s direction. If it is done, the executor receives the interest; and if not, he has not done his duty, and hence he must pay interest. Suppose he is asked to make up his accounts every six months, and make an investment ; he would answer-, ‘the law is my guide, and that gives me a year to make up my accounts;’ and the answer would be irresistible, and no Court would dare to give an order, requiring him to make up his accounts at a shorter period than is allowed bylaw.
But it is said, concede it to be true that the rule is as stated in Jones v. West, still the executor or administrator ought to *565 be charged with interest on the sale bill from the day on which it fell due, and not from the end of the current year. This proposed exception has received the assent of Chancellor Johnston, in the case of Harper v. Ardis, and also of an able accountant, the ordinary of Newberry district, in this case; it is hence necessary that, differing with them as I do, I must undertake to point out, on a diligent legal examination, the reasons why it cannot be allowed as an exception. To do so, I propose to begin by looking to the provisions of the law au-thorising the sale of personal estate, where there is no provision in a will directing it, or where there is an intestacy. The 29th section of the act of 1789 (P. L. 493,) directs, “ when it shall be requisite to make sale of any part of the personal estate of testatator or intestate, either for a division, payment of debts, err to prevent the loss of perishable articles, application shall be made to the Court of the county or ordinary, (as the case may be,) where the will was recorded or administration granted, whereupon such Court may refuse or grant such order for sale, regulating the time, place, and credit to be given, in such manner as to do impartial justice to all persons interested therein.”
In only three cases can a sale take place, to wit: 1st, for division : 2d, for payment of debts : or 3d, to prevent the loss of perishable articles : in them all, no good reason can be discovered why the amount of the sale bill should be charged against the executor, or administrator, with interest from the day on which it fell due; and thus, in all cases of the hind, constitute an exception to the rule charging interest only on annual balances. In the cases of sales for division,, or for the payment of debts, or for both combined, the necessity of retaining the fund, as received, for the very purposes of the order, is apparent. The legal presumption, under such circumstances, would be that the whole amount of sales might be required to be paid away in the course of the current year. Indeed this ought to be the case invariably; the debts should be ascertained within the time allowed by law ; a sufficient sum left in the hands of the executor or administrator, and the balance distributed, by being paid to those of full age and to the guardians of the minors. If this was promptly done, there would be an end of this uneeasing complaint about the difficulty of adjusting the executor’s and administrator’s accounts. Each distributee’s portion would be thus ascertained, and put into his or her own hands, if of full age, or, if a minor, into the hands of his or her guardian, to be applied to the respective use of the distributees. If, however, this is not done, how can the amount of the sale bill be regarded in any other point of view than as a fund received in the course of the current year, *566 an^ subject to the same necessities of being retained during it for the purposes of the estate, and thus being unproductive until the commencement of the next year. Where a sale is ma(je preVent the loss of perishable articles, it would be generally of inconsiderable character, and perhaps, too, of annual recurrence, so that it would come directly within all the reasons of the rule, as applied to current receipts and expenditures.
It is, however, supposed, that the mode adopted by the intelligent ordinary of Newberry district, of charging executors or administrators with the amount of the sale bill, as the receipt of a sum in gross, is incorrect; and that the sums arising from the sale bill should be returned as received, with their arrears of interest. His practice is, I think, correct. An executor or administrator, who sells the estate of his testator or intestate, is legally chargeable with the whole amount of it. If it should turn out from a defect in the title of the property sold, or from its unsoundness, or from a subsequent insolvency of the purchaser and his sureties, (if the executor or administrator has made due diligence to collect the debt,) he may be exonerated from the charge, and the loss would fall on the estate. But prima facie, he is liable for the sale bill, and the onus of excusing himself from the charge, is on him. If he has no reason to shew, why he should not be charged with the whole amount, it is properly charged to him as so much money received on the day when due. When, by law, can this be brought into account ? Not until the year in which it is due. When are the executors’ or administrators’ accounts to be made up in relation to it ? Not until the next year; and hence no interest can be computed until the beginning of that year, when the account of the year in which it fell due, is to be returned to the ordinary.
But it is not to be understood from this or any of the preceding opinions, that the debts of the estate are to be credited to an executor or administrator, with the accruing interest, after the sale bill falls due. It will, generally, in legal contemplation, be regarded as furnishing a sufficient fund for their pay. ment. They ought to be credited, in his account, with interest computed and added to the time of payment, if that was before the sale bill was due ; but if payment was made after the sale bill fell due, then with interest until that time. It seems to me, at present, that this affords the only security against executors or administrators making profit by the management of their testator’s or intestate’s estates, which can be legally suggested. However well the rule to charge interest only on annual balances of principal, may in the beginning appear to work for executors or administrators; yet, I have no *567 doubt that where their accounts .are made up under it, and the other familiar rule, to apply first the- interest of each current year on the balance of the preceding year, to the expenditures, that it will be found they will generally, by very prudent ma. nagement and care, hardly escape loss, instead of making profit.
It was argued by the counsel for the appellee, that if an estate was sold, and the terms of the sale, under the order of the ordinary, should be, “the proceeds to be paid at a future day, with interest from the day of sale that, under the rule charging the amount of the saLe bill as an annual receipt, and computing interest on the balance of its current year, that the executor or administrator would pocket the intermediate interest. But this is not so. In such a case, the interest would be a part of the principal amount of the sale bill, and must be computed to the time it fell due, and be added to the amount of the sale bill, and the aggregate charged as the amount received-
2. It is contended in this case, that the appellant cannot be charged with interest on the balance of George Dugan’s estate during the time it was unrepresented. We think this is true, and the necessary legal consequence of a want of administration on that estate. It cannot be that the appellant, as administrator of William Dugan, deceased, was bound to make interest on the estate of George Dugan, deceased ; he did not in any shape represent the latter; he had no right to receive a single dollar of its funds, or to apply, orto manage the same. Upon the death of William Dugan, any sum which he was in arrear to George Dugan’s estate, was a debt due and owing by the former to the latter. The question is, did it bear interest during the time that no person was authorized to receive? Interest is given as legal damages for the unlawful detention of a debt. Can there be an unlawful detention when there is no one authorized to receive ? It is clear there cannot be. When a day is fixed for payment of an ascertained sum, and it is not then paid, interest is generally the necessary consequence of the neglect. But to this position, it will be hereafter seen, are some exceptions. In this case when was this debt payable ? On demand is the answer. There could be no demand until administration was granted, and hence interest was not recoverable sooner. Schmidt v. Limehouse, 2 Bail. 276. This position has the sanction of the case of Murray v. The East India Company, 5 Barn. & Ald. 204; 7 Eng. Com. Law Rep. 66. The action was on bills of exchange, due and payable three and twelve months after sight, in favor of William Hope, Esq. as payee or indor-see : in a few months after their respectivo dates, they were *568 accepted by the defendants. Pie was lost on his passage from the .hast Indies to England. lor three years there was no ^ministration on his estate. About the end of that time» Jas. Murray administered on his estate, and demanded payment, which was refused. He subsequently died, and the plaintiff' administered de bonis non. It was contended by the defend, ants, that they were not liable for interest at all. Upon this question the Court said, “ we are of opinion that the plaintiff is entitled to recover interest; but that the calculation must begin from the time of the demand of payment by the first administrator, and not sooner.” In that case, it will be observed that three of the bills were payable three months, and the fourth twelve months after acceptance. The time of payment was then ascertained, by the contract, to be on a certain day ; but, inasmuch as no one was then authorized to receive the money, payment could not be made; and hence there was no default on the part of the acceptors. There being no person in esse legally entitled to receive the money on the day of pay. ment, the debt became payable on demand, and interest could only be recovered from a demand made. That case was a stronger one for the allowance of interest than this. For there the time of payment was fixed on a day certain, and interest was of course, unless the defendants could shew something to excuse them from the payment of it; here, from the beginning, the debt is payable on demand, and interest cannot legally arise until a demand is made. Of course, no demand could be made until administration; and then I understand it was made; and hence I have, and may hereafter speak of the grant of administration and the demand of payment, as one and the same time.
It is a clear principle of law, that if such a disability exist as will prevent any legal demand of a debt by action, such as that of an alien enemy, that interest will not be allowed during its continuance. There is, in this respect, a distinction between such a disability as prevents the party from suing at all, in any manner or form, during its continuance, and such as incapacitates the party from suing alone, or in her or his own name, but allows the suit to be brought by joining another, as husband and wife ; or by some person for the party, as in the case of suits by a next friend for an infant. In the case of Du-Belloix v. Waterpark, 1 Dowl. & Ry. 16; 16 Eng. Com. Law Rep. 12, 13, the Court said, “there was another objection to the plaintiff’s recovering interest on the debt, for during the greatest part of lhat time he was an alien enemy, and could not have recovered even the principal in this country, and, at all events, during that portion of the time, the interest could not have run, and it roould have been illegal to pay the bill whilst the *569 ‘plaintiff was an alien enemy” The action in that case was on a note, (although it is called, in the conclusion of the C. J’s. opinion just quoted, a bill,) dated 27th December, 1787, at Paris, payable six months after date: the case was tried at Hilary Term, 1822. The plaintiff was a Frenchman and the defendant an Englishman. In that case, the Court may be regarded as saying, it is even more clear, that interest will not run during the continuance of the disability of an alien enemy, than that the plaintiff could not, during the same time, maintain his action. The reason for both is, however, in one point of view, the same ; “it would have been illegal to pay the bill whilst the plaintiff was an alien enemy.” In this case, the very same reason in substance may be given. It would have been illegal to pay the debt to any one until there was a grant of administration.
Fair & Pope, for the motion.
J. J. Caldwell, contra.
In this State, interest on the assets of a testator or intestate, in the hands of an executor or administrator, has been suspended during the continuance of the Revolutionary war, the circumstances of which both prevented making interest on the sum in hand, and also the payment of principal to the persons entitled. Dickinson v. Legare, 1 Eq. Rep. 537, 542.
It is hence, I think, clear both on reason and authority, that while there is no person in esse to whom payment can be legally made, that interest will not run on a debt.
The motion to reverse the decision of the judge below and the ordinary, is granted on both grounds.
Johnson and Hamper, Js. concurred.

 In Chancery — decided this Term, by referring to this case.

 Jones and Wife et. al. v. Arthur West, executor.
Columbia, May Term, 1832.
tingl0eX°o¿f airims.aucóunts.
On appeal to this Court, from the decree of Chancellor Dessaus-sure, one of the questions made, was, as to the mode of stating the accounts ag'ainst the defendant, as executor. The following' is the opinion of the court on this point, delivered by
O’Neaei. J. It is strange that the mode of stating an account against an executor or administrator, should still not be well *562 understood, or uniformly pursued by the commissioners and. masters in. Equity, in different parts of the State. In Foote v. Van Ranst, I had occasion to state the mode, and as that case is not accessible to the commissioner who must pass upon this, case, I will repeat the substance of the directions given in it The account is to be made up annually; and interest is to be computed on the annual balances. For the year in which the account commences, no interest is computed; at the end of it, the sum received is ascertained, and from it the expenditures are deducted ; the interest is computed for the ensuing year, and added to the amount received in it and the balance of the past year, and from the aggregate, the expenditures are deducted. If in any year, the expenditures are less than the interest on the balance of the past year, they are to be deducted from it, and the balance of interest is to be kept separate from the principal or interest bearing fund, so as not to be compounded. On the balance struck in each year, if the interest is less than the expenditures of it, interest is computed for the next year. A fund received in the current year is not entitled to bear interest until the, annual balance is struck, when it will constitute a part of it.
The legacies of $>2100 to each of the testator’s children, were payable when they respectively attained to full age, or were married. From the time they fell due, the legatees were entitled to interest until paid. The commissioner should deduct the legacies from the general funds of the estate, in the year in which they fell due and charge the executor with interest on each legacy, from that time until he paid it.